UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No.: 1:20 CR 565 |
| | ) | |
| Plaintiff | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| v. | ) | |
| | ) | |
| CLEOPHUS THOMPSON, *et al.*, | ) | |
| | ) | |
| Defendants | ) | <u>ORDER</u> |

Currently pending before the court in the above-captioned case are Defendant Malik Huie's ("Huie") Motion to Suppress (ECF No. 30) and Defendant Cleophus Thompson's ("Thompson") Motion to Join Co-Defendant's Motion to Suppress ("Motion to Join") (ECF No. 32). For the reasons that follow, the court denies both Motions.

### I. BACKGROUND

**A.    Facts**

The parties do not dispute the following facts, which come from the Wadsworth Police Department ("WPD") police report. On June 18, 2020, Officer Seth Petit ("Officer Petit") of the WPD initiated a traffic stop on a vehicle for failing to display a license plate or temporary license tag. Although the car, which Huie was driving and in which Thompson was a passenger, did have a temporary tag, the tag had expired four months prior and was not visible from the rear of the car because it had fallen out of the window. As Officer Petit approached, he immediately noticed the

smell of marijuana coming from the vehicle and called for backup. And when Huie retrieved his vehicle registration from the center console, it was covered in loose bits of marijuana "shake." Neither occupant had a physical identification, but Huie offered his driver's license number and Thompson gave his name and social security number. After Officer Petit asked several initial questions related to the traffic stop, he had Huie move to his patrol car while he ran Huie and Thompson's information. During the ensuing conversation, Huie admitted the substance on the registration was marijuana but denied having any more in the car. While Huie waited with another officer who had arrived on scene, Officer Petit returned to the car to talk with Thompson. Like Huie, Thompson denied the presence of any additional marijuana. Officer Petit then had Thompson join Huie by the patrol car where he informed them "that [h]e was going to search the vehicle, and that if all they had was the Marijuana shake, [he] would have them on their way in no time." (Ex. 2 to Mot. Suppress at PageID #130, ECF No. 30-2.) At that point, Huie admitted there was a small baggy with a "negligible amount" of marijuana for his personal use in the center console. (*Id.* at PageID #130–31.) After patting them down, the officers found no contraband on Huie or Thompson's persons. But, as Huie predicted, Officer Petit's subsequent vehicle search turned up a baggy in the center console with approximately 1 to 2 grams of marijuana. As he continued to search the car, Officer Petit also discovered a loaded revolver under the passenger's seat and a large plastic bag in the glove compartment containing a white powder, which turned out to be approximately 114 grams of cocaine. After taking Huie and Thompson into custody, the officers later discovered a digital scale and several different cell phones.

**B.     Procedural History**

On August 31, 2020, the Magistrate Judge signed a Criminal Complaint for both Defendants. (ECF No. 1.) A federal grand jury later returned an Indictment against the Defendants, charging possession with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) (Count 1); possession of a firearm in furtherance of a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count 2); and possession of a firearm under a disability, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (Counts 3 and 4). (ECF No. 3.) Defendants subsequently pled not guilty, and the court ordered them detained pending trial. (*See* ECF Nos. 16, 18.)

Huie filed his Motion to Suppress on February 10, 2021, challenging the validity of Officer Petit's vehicle search, and Thompson sought leave to join Huie's Motion two days later. (ECF Nos. 30, 32.) The Government opposes both Motions. (ECF Nos. 31, 33.) Huie filed a Reply on March 2, 2021. (ECF No. 34.) No party requested a hearing, and the court finds no material factual disputes that necessitate testimony or clarification—indeed, Huie confirms as much in his Reply. (Reply at PageID #156, ECF No. 34 ("In consideration of the Government's Response no evidentiary hearing is required.").) Accordingly, the court proceeds to rule on Defendants' Motions without a hearing.

## II. LEGAL STANDARD

The Fourth Amendment protects against unreasonable searches and seizures by generally forbidding the introduction in court of evidence obtained by government officers through a violation of the Amendment. *Olmstead v. United States*, 277 U.S. 438, 462 (1928). To safeguard this right, evidence secured through an illegal search or seizure may not be used in criminal proceedings. *Mapp v. Ohio*, 367 U.S. 643 (1961). Although the Fourth Amendment "contains no provision expressly

precluding the use of evidence obtained in violation of its commands," the exclusionary rule "operates as 'a judicially created remedy . . . through its deterrent effect, rather than a personal constitutional right of the party aggrieved.'" *United States v. Leon*, 468 U.S. 897, 906 (1984) (quoting *United States v. Calandra*, 414 U.S. 338, 348 (1974)).

The touchstone of Fourth Amendment analysis is reasonableness. It is well-settled under the Fourth Amendment "that a search conducted without a warrant issued upon probable cause is 'per se unreasonable . . . subject only to a few specifically established and well-delineated exceptions.'" *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973) (citations omitted). One exception, the plain view doctrine, allows police, consistent with the Fourth Amendment, to observe and seize an object without a warrant "if police are lawfully in a position from which they view [the] object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object." *United States v. Herndon*, 501 F.3d 683, 692 (6th Cir. 2007) (quoting *Minnesota v. Dickerson*, 508 U.S. 366, 375 (1993)). Another, the vehicle exception, allows law enforcement to conduct a warrantless search of a vehicle "as long as they have probable cause to believe that the vehicle contains evidence of a crime." *United States v. Brooks*, No. 19-2283, 2021 WL 451010, at *3 (6th Cir. Feb. 9, 2021).

### III. LAW AND ANALYSIS

**A.    Motion to Suppress**

The parties do not dispute the operative facts at issue in this case. They agree that Officer Petit initiated a valid traffic stop, that he smelled marijuana coming from the car, and that he saw marijuana shake in plain view on Huie's vehicle registration. There is no question that Officer Petit conducted the subsequent vehicle search without a warrant or consent. And Defendants do not

challenge any action except Officer Petit's warrantless search of Huie's car. So the question before the court is a relatively narrow legal one: does the odor of marijuana during a traffic stop justify a full vehicle search?

Huie's Motion to Suppress seeks to frame the question more broadly as whether the commission of a minor misdemeanor offense in general establishes probable cause such that police officers are entitled to conduct a full vehicle search. Under Ohio law, possession of a small amount of marijuana is a minor misdemeanor. Ohio Rev. Code § 2925.11(C)(3)(a). So, according to Huie, permitting police to search a vehicle any time they discover traces of marijuana is akin to allowing them to conduct a full vehicle search "due to a parking or other quasi-civil violation." (Mot. to Suppress at PageID #109, ECF No. 30.) Because the latter scenario clearly offends notions of reasonableness under the Fourth Amendment, Huie argues that the former scenario does, too.

But Huie's framing is too broad, and his analogy to traffic violations breaks down under scrutiny. There is no "quantity issue" in the context of traffic citations. For example, if a driver parks too close to a fire hydrant, it makes no difference whether the car is within 5 inches or 5 feet of the hydrant—the minor misdemeanor traffic offense is the same regardless of the "amount" of the violation. Ohio Rev. Code § 4511.68(a) (making it a minor misdemeanor to park "[w]ithin ten feet of a fire hydrant"). On the other hand, the "amount" of the violation is crucial in the context of marijuana possession. While possession of less than 100 grams is a minor misdemeanor, the criminal classification grows more serious as the quantity of marijuana increases. Indeed, marijuana possession becomes a felony at 200 grams, and larger amounts trigger mandatory periods of incarceration. Ohio Rev. Code § 2925.11(C)(3)(c)–(g). Because the amount of marijuana dictates the severity of the criminal conduct, it makes sense that police would investigate further once they

detect marijuana in a vehicle. In other words, the presence or suspected presence of marijuana gives police officers probable cause to believe additional marijuana may be present. By contrast, there is no such logical link for minor misdemeanor traffic violations—that is, when police observe a driver park illegally, there is no reason to suspect that searching the car will turn up additional evidence of illegal parking or any other offense.

Huie's argument also fails to overcome the Sixth Circuit's admonition that this Circuit "has long held that officers have the required probable cause when they detect the odor of illegal marijuana coming from the vehicle." *Brooks*, 2021 WL 451010, at *3 (collecting cases). Applying this rule in combination with the vehicle exception, courts throughout this Circuit have consistently held that police can conduct a full vehicle search when they smell marijuana coming from a car. Huie attempts to distinguish these cases by differentiating between the smell of burnt marijuana and the smell of raw marijuana. He argues that only the former establishes probable cause because burnt marijuana implicates suspicion that a driver may be driving under the influence, which is a separate offense from possession. Ohio Rev. Code §§ 4511.19(A)(1)(j)(vii), (viii)(I)–(II). According to Huie, in jurisdictions where marijuana possession is decriminalized, it is this concern about additional wrongdoing beyond mere possession that gives officers probable cause to conduct a search. (*See* Mot. to Suppress at PageID #109, ECF No. 30 (citing *United States v. Maffei*, 417 F. Supp. 3d 1212, 1226 (N.D. Cal. 2019)).) While Huie's argument has some intuitive appeal in light of the nationwide trend toward more relaxed views regarding marijuana possession, the court ultimately finds it unpersuasive. The primary case Huie relies on dealt with a vehicle search in California that occurred after that state altered its laws to "clearly establish[] that lawful cannabis activity is no longer a 'basis for detention, search, or arrest.'" *United States v. Maffei*, 827 F. App'x 760, 761 (9th Cir. 2020).

-6-

Following this change in California's cannabis laws, the Ninth Circuit explained that police officers could no longer reasonably rely on prior case law "holding that the odor of marijuana alone establishes probable cause to search [a] vehicle." *Id.* at 761–62. By contrast, Ohio has not updated its laws in a similar way, and the Sixth Circuit decided *Brooks* just earlier this month. Accordingly, the precedent in this Circuit regarding marijuana and probable cause remains good law. It is true, as Huie argues, that many of those cases involved the smell of burnt rather than raw marijuana. But the Sixth Circuit has never drawn this distinction. And given the unqualified pronouncement in *Brooks* that the odor of marijuana gives officers probable cause to conduct a vehicle search, the court concludes that the distinction is legally irrelevant.[1]

Because the police officers detected the smell of marijuana emanating from Huie's car and then recognized the marijuana shake that was stuck to the vehicle registration, the court finds that the officers had probable cause to search Huie's car. Other evidence in the records—including Defendants' furtive behavior during the traffic stop and the fact that they initially lied to Officer Petit about the presence of the marijuana—further supports the conclusion that the vehicle search was reasonable. The court therefore denies Huie's Motion to Suppress.

**B.      Motion to Join**

---

[1] Indeed, *Brooks* may have involved raw rather than burnt marijuana. Neither the Sixth Circuit nor the district court explicitly addressed this point. Both courts merely stated that the police officers detected the smell of marijuana and observed that one defendant appeared to have a marijuana cigar tucked behind his ear. *Brooks*, 2021 WL 451010, at *1–2; *United States v. Brooks*, No. CR 18-20671, 2019 WL 1306167, at *2 (E.D. Mich. Mar. 22, 2019). But at the district court's evidentiary hearing, one of the police officers testified that the tip of the cigar revealed a green leafy substance that was consistent with the appearance of marijuana. In other words, the cigar was unlit. So unless the odor came from another source, and there is no indication that it did, the officers in *Brooks* detected the smell of raw marijuana.

Thompson seeks permission to join Huie's Motion to Suppress. He argues that "[t]he issues raised in the Huie Motion to Suppress involve the search of an automobile occupied by both defendants and are arguable on behalf of each defendant." (Mot. to Join at PageID #143, ECF No. 32.) This Motion fails for two reasons.

First, as the Government points out, the record shows that Thompson was merely a passenger, which means he lacks standing to challenge the search of Huie's car. (*See* Resp. to Mot. to Join at PageID #147–49, ECF No. 33.) It is well-established that a passenger who lacks a possessory interest in a stopped vehicle does not have standing to challenge the validity of a search of that vehicle on Fourth Amendment privacy grounds. *Rakas v. Illinois*, 439 U.S. 128, 148 (1978); *see also United States v. Bah*, 794 F.3d 617, 626 (6th Cir. 2015). This follows from the Supreme Court's repeated declaration that "Fourth Amendment rights are personal rights that may not be asserted vicariously." *Rakas*, 439 U.S. at 133. That means a defendant has standing to challenge a search or seizure only if they suffered an infringement of their own Fourth Amendment rights, as opposed to those of a third party. *See id.* at 134 ("A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed."). Because Thompson was merely a passenger in Huie's car, he had no reasonable expectation of privacy. Moreover, neither Huie nor Thompson challenge the validity of the initial traffic stop, which means Thompson was not subjected to an unlawful seizure. *See United States v. Torres-Ramos*, 536 F.3d 542, 549 (6th Cir. 2008) (holding that passengers may challenge a traffic stop and detention under the Fourth Amendment as an unlawful seizure). Thus, Thompson suffered no Fourth Amendment infringement of his own. And because he cannot vicariously assert a violation of Huie's rights,

Thompson lacks standing.

Second, Thompson's attempt to suppress evidence fails on the merits. Thompson noticeably does not raise any new arguments, but instead asks only that he be allowed to adopt the arguments in Huie's Motion. Consequently, even if the court considered the merits of Thompson's request, the Motion to Suppress would fail as to Thompson for all the same reasons it fails as to Huie.

### IV. CONCLUSION

For the foregoing reasons, the court denies Huie's Motion to Suppress (ECF No. 30) and Thompson's Motion to Join (ECF No. 32).

IT IS SO ORDERED.

*/s/ SOLOMON OLIVER, JR.*
UNITED STATES DISTRICT JUDGE

March 11, 2021